UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


David Najera-Castillo

   v.                                  Civil No. 17-cv-029-PB

Jefferson B. Sessions et al.[1]


**REPORT AND RECOMMENDATION**

     Before the court is the petition for a writ of habeas corpus filed by David Najera-Castillo under 28 U.S.C. § 2241, asserting claims for release under Zadvydas v. Davis, 533 U.S. 678 (2001). Najera-Castillo, a Mexican citizen with end-stage renal disease who undergoes dialysis three days each week, is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Strafford County Department of Corrections ("SCDOC") in New Hampshire, where he has been held since December 1, 2015, pending his removal to Mexico. The court referred Najera-Castillo's § 2241 petition to the undersigned magistrate judge for issuance of a report and recommendation on

---

     [1]Respondents in this case are: United States Attorney General Jefferson B. Sessions, Department of Homeland Security Secretary John F. Kelly, and the Immigration and Customs Enforcement Boston Field Office Director (collectively, the "federal respondents"); as well as petitioner's immediate custodian, Strafford County Department of Corrections ("SCDOC") Superintendent Bruce Pelkie.

the merits.  See Mar. 28, 2017 Minute Order; see also Apr. 3, 2017 Order (Doc. No. 23).

Petitioner and the federal respondents appeared through counsel at an evidentiary hearing before the magistrate judge in April 2017.[2]  The parties specifically agreed at the hearing to shorten this Report and Recommendation's objection period to seven days.  See Apr. 12, 2017 Minute Entry.  ICE has agreed to forebear from transferring Najera-Castillo to a Houston ICE detention facility while this matter remains pending.  See Notice (Doc. No. 21).

The parties have filed proposed findings of fact and conclusions of law.  See Doc. Nos. 30, 32.  To the extent this Report and Recommendation does not specifically address the matters asserted in those proposed findings and conclusions of law, they are denied.

## **Background**

Except where otherwise indicated, the following facts are not in dispute.  Najera-Castillo was born in Mexico and came to

---

[2]Petitioner's immediate custodian, SCDOC Superintendent Pelkie, did not appear at the hearing, and has not actively participated in the proceedings on the merits of the petition. Pelkie's response to the petition states that he "will follow whatever Order issues from this court regarding the custody and control of the petitioner."  Doc. No. 8.

the United States decades ago.  See POCR Worksheet, Feb. 2016, Ex. EE, at 9 (ICE 0021).  Najera-Castillo's mother lives in Massachusetts.  See id.; see also Doc. No. 34, at 59.  Najera-Castillo was admitted to the United States as a lawful permanent resident in 1993.  See Jt. Statement of Facts, Doc. No. 26 ¶ 1.  He was deported to Mexico in November 1999 after he had been convicted of felony charges in Texas.  Id. ¶¶ 5-6.  He re-entered the United States shortly after his removal, without authorization, and was subsequently arrested, charged, and convicted of illegal reentry.  Id. ¶¶ 7, 11, 12.

Between March 2010 and October 2015, ICE issued a series of stays of the removal of Najera-Castillo for humanitarian reasons, based in part on his end-stage renal disease and need for dialysis.  Id. ¶¶ 13, 24.  During that time period, he remained on supervised release.  Id.

ICE denied Najera-Castillo's October 2015 application for a stay of removal.  Id. ¶¶ 14, 15. 18.  On November 16, 2015, Najera-Castillo was arrested in Massachusetts on drug possession charges that were never prosecuted.  Id. ¶ 16.  On December 1, 2015, Najera-Castillo was again taken into ICE custody, where he remains at this time.  Id. ¶¶ 17, 18, 23.

In the sixteen months that have passed since ICE took Najera-Castillo into custody, ICE has issued decisions continuing his detention four times, in February 2016, May 2016,

November 2016, and March 2017.  Id. ¶¶ 19, 20, 21, 22.  The March 1, 2017 decision states that "ICE is able to move forward" with removal, and that pending "medical coordination" with Mexico, Najera-Castillo must remain in ICE custody.  Id. ¶ 21; Decision to Continue Detention, Mar. 1, 2017, Ex. AA.

ICE Detention and Deportation Officer Jennifer Lamoureux testified at the hearing in this case that Mexico has a policy of requiring coordination with the local Mexican Consulate when an ICE detainee from Mexico has severe medical or mental health needs, to secure appropriate and safe repatriation back to Mexico.  See Doc. No. 33, at 16, Test. of J. Lamoureux, Tr. of Evid. Hr'g, Day One, Apr. 6, 2017.  She further testified that ICE has had problems removing Mexican citizens, like Najera-Castillo, who have severe medical or mental health care needs and do not have identified family members in Mexico.  See Doc. No. 33, at 16, 24-25; see also Email from J. Lamoureux, May 25, 2016, Ex. H.

Lamoureux testified that, in June 2016, at the request of the Department of Homeland Security and ICE, the U.S. Department of State sent a Diplomatic Note to the Government of Mexico, which asked "that the Government of Mexico immediately find sponsors to receive and care for the needs" of six specifically identified individuals whose removal had been delayed for up to eighteen months at that point, who had serious medical or mental

health needs.  Diplomatic Note, June 22, 2016, Ex. A; see also Doc. No. 33, at 36.  Najera-Castillo is not one of the six people listed in that Diplomatic Note.  See Doc. No. 33, at 60.

At a July 26, 2016 meeting with ICE and representatives of the U.S. Department of Homeland Security, which Lamoureux attended, the Mexican Ministry of Health made a verbal commitment to explore alternatives to Mexico's requirement that there be a family letter of support, in cases where a Mexican ICE detainee with serious medical or mental health care needs is ambulatory.  See Doc. No. 33, at 25; Doc. No. 34, at 90, 91, 92, Test. of J. Lamoureux, Tr. of Evid. Hr'g, Day Two, Apr. 11, 2017; see also RTWG Conclusions, Ex. G.  Lamoureux testified that the Mexican Ministry of Health made a commitment to assist with two specific cases, neither of which was Najera-Castillo.  See Doc. No. 33, at 25.  Najera-Castillo was not discussed at that meeting.  Doc. No. 33, at 27; Doc. No. 34, at 31.

On September 13, 2016, the Boston Mexican Consulate stated that although the Consulate would be happy to interview Najera-Castillo again, consular officials did not think it would be productive, as they had interviewed Najera-Castillo in May 2016; he was not in contact with Mexican relatives; and he did not consent to having consular officials initiate a search for such relatives.  See Email, Sept. 13, 2016, Ex. K, at 1-2.

The ICE Boston Field Office reported that the Boston

5

Mexican Consulate had re-interviewed Najera-Castillo in October 2016.  See ICE Boston Field Office, Email to J. Lamoureux, Oct. 4, 2016, Ex. I, at 1-2.  That email states that consular officials described Najera-Castillo as "uncooperative" regarding the provision of information regarding relatives in Mexico who could care for him.  Id.  Consular officials also said they would work on finding a care facility that would take Najera-Castillo, and that they would provide him with money if he were removed.  Id.

A January 23, 2017 letter from the Boston Mexican Consulate to Najera-Castillo's counsel, sent after the events reported in those ICE emails, indicates that the Consulate's efforts to find a medical facility to care for Najera-Castillo were not fruitful because of the lack of a Mexican sponsor for him.  That letter states, as follows:

> This Consulate General has made continuous efforts with the Mexican authorities to obtain housing and access to adequate health services for Mr. Najera.
>
> However, our efforts have been infructuous because of the inexistence of any available person to sign a healthcare proxy or assume responsibility for the follow up of Mr. Najera's medical attention and treatment.

Boston Mexican Consulate Letter, Jan. 23, 2017, Ex. DD.

On February 2, 2017, Lamoureux sent out an email, stating that her Embassy contact had said he was committed to contacting the Boston Mexican Consulate ("BOS") and the Mexican foreign

6

ministry ("SRE") to push Najera-Castillo's case.  Email from J. Lamoureux, Feb. 2, 2017, Ex. J.  Pressure from Lamoureux's contact, if it was applied, evidently did not change the Boston Mexican Consulate's conclusions as to Najera-Castillo later that month.  "On 2/16/17 the Boston consulate stated they have been unable to arrange medical care in Mexico and are waiting on an official answer from their headquarters."  EARM Log Entry, Feb. 22, 2017, Ex. BB.

Lamoureux testified on April 11, 2017 that the Mexican government has not finally resolved whether the requirement of a family letter of support may be waived in cases involving Mexican nationals with serious medical issues, where there is no family support.  Doc. No. 34, at 91, 92.  That issue remains a topic of discussion in an intergovernmental working group, involving representatives of the Mexican government and ICE, in which Lamoureux participates.  Doc. No. 34, at 91-92.  Lamoureux speaks with her contact at the Mexican Embassy "quite often" on that topic.  Doc. No. 34, at 92.  Lamoureux testified that when she told her Mexican Embassy contact on April 11, 2017, that ICE was "standing firm on its efforts for removal," and that she would be testifying here, "the embassy just says to me that they understand, you know, and wish me luck and that we will discuss this again at our next quarterly meeting [tentatively scheduled for later in April 2017,] as far as moving forward with a

7

resolution."  Doc. No. 34, at 92.

**Discussion**

The holding in Zadvydas v. Davis, 533 U.S. 678 (2001), provides the standard for evaluating whether Najera-Castillo's continuing confinement comports with federal law.  Zadvydas recognized six months as a presumptively reasonable period of post final removal order detention to allow the government to effect an alien's removal.  Id. at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. . . . [A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id.

More than a year has passed since ICE took Najera-Castillo into custody.  The evidence shows that Mexico has had a policy of not repatriating Mexicans with serious medical needs who do not have family support in Mexico, and there is no evidence showing that Mexico has waived that policy for Najera-Castillo. Najera-Castillo has specifically informed ICE and Mexican officials that he does not have relatives in Mexico.  There is no evidence that he has such family in Mexico.  Najera-

Castillo's name has not appeared on any Diplomatic Note or other formal U.S. government communication, specifically asking the Government of Mexico to accept him for repatriation, notwithstanding the lack of family support.

The "medical coordination" that ICE has indicated is ongoing with respect to Najera-Castillo does not appear likely to end in the foreseeable future. The Boston Consulate's January 2017 letter specifically states that the Consulate's efforts to find a medical placement for Najera-Castillo in Mexico have not been fruitful, as Mexican officials have been unable to find any family members who can care for Najera-Castillo in Mexico. A Mexican Embassy official has recently wished ICE "luck" in this matter, without providing any assurance that progress is occurring in removing the barriers to Najera-Castillo's removal. Petitioner has thus provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Accordingly, the burden shifts to the federal respondents to rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future. Factors relevant to that inquiry include the total length of detention; the likelihood of successful future negotiations to secure repatriation of the individual, Zadvydas, 533 U.S. at 702; and whether the alien has engaged in dilatory tactics, cf. Reid v.

Donelan, 819 F.3d 486, 500 & n.4 (1st Cir. 2016) (listing factors relevant to whether pre-removal period detention, under 8 U.S.C. § 1226(c), comports with due process).

The total length of Najera-Castillo's detention is approaching eighteen months. The record does not suggest any reasonable basis for finding that any substantial portion of that delay has been attributable to dilatory tactics attributable to Najera-Castillo. ICE has never charged Najera-Castillo with failing to cooperate in his removal. Najera-Castillo's counsel's diligent advocacy did not result in any substantial part of the delay in this case. And while there is hearsay, embedded within hearsay, that Najera-Castillo did not consent to having Mexican government officials search for his family, and did not identify any Mexican family members when interviewed by consular officials, Najera-Castillo has consistently reported that all of his family -- his mother, aunts, uncles, and cousins -- live in the United States. See Notes attached to Decision to Continue Detention, Feb. 25, 2016, Ex. V at 8; POCR Worksheet, Feb. 2016, Ex. EE, at 4 (ICE 0016). No evidence shows that Najera-Castillo has any known, identifiable Mexican relatives, and the federal respondents have not shown that if Najera-Castillo had consented to a search for Mexican relatives, the duration of his ICE detention would have been shorter.

Lamoureux testified that ICE believes Najera-Castillo could be removed to Mexico within thirty days of being transferred to an ICE facility in Houston, and that nothing stands in the way of that transfer apart from ICE's agreement to forebear from effecting it during this proceeding. See Doc. No. 33, at 63-64. The federal respondents rely entirely on the track record of Houston personnel in effecting the removal of three people named on the Diplomatic Note who needed dialysis, who were removed within thirty days of being transferred to the ICE detention facility in Houston. Doc. No. 33, at 59-60; Doc. No. 34, at 51. The most recent removal of those listed individuals occurred on March 7, 2017, several weeks after that person had been transferred to the ICE Houston detention facility from a facility in Miami. See Doc. No. 33, at 62, 63, 66.

The federal respondents have offered no evidence from which this court can reasonably conclude that Najera-Castillo's removal will follow the same course as those three cases. Najera-Castillo is not one of the six people listed in the Diplomatic Note. See Doc. No. 33, at 60. Lamoureux could not state with certainty whether any similarly-situated Mexicans have been removed to Mexico, if their names did not appear on that Diplomatic Note. See Doc. No. 34, at 88, 89, 91. All of the evidence in the record about the success that the Houston Mexican Consulate has had in facilitating removals relates only

11

to those named on the Diplomatic Note.  No new Diplomatic Note is in the offing.  See Doc. No. 34, 91.  And ongoing discussions in the working group relating to alternatives to the requirement of family support do not appear to have any fixed endpoint or deadline for completion.  Evidence that three people have been removed within nine months of their placement on a Diplomatic Note hardly points to a likelihood that removal of Najera-Castillo will proceed within a reasonably foreseeable time.

The federal respondents have provided no specifics regarding the "tactics" used by the Houston Mexican Consulate to facilitate the removal of three people needing dialysis on the Diplomatic Note.  Doc. No. 24, at 58.  There is no evidence that personnel at the Houston Mexican Consulate or in the Houston ICE Field Office would take any specific steps to effect Najera-Castillo's removal that have not already been taken by their counterparts in Boston.  There is thus no evidence from which this court could reasonably conclude that simply transferring Najera-Castillo to Houston will put in motion procedures that ICE and Mexican officials have not already implemented, or have implemented without success, since ICE first took Najera-Castillo into custody in December 2015.

This court does not place any substantial weight on testimony, unsupported by any documentary exhibit, that there are medical facilities in Mexico that could provide dialysis to

Najera-Castillo three times per week, as nothing in the record suggests that Mexican government officials have similarly concluded that petitioner can access those facilities.  ICE's own conclusion that there is a "significant likelihood of removal in the reasonably foreseeable future," set forth in each successive decision to detain Najera-Castillo, similarly does not bear any substantial weight in this court's analysis; the factors cited in support of ICE's conclusions merely report, for example, that Najera-Castillo is on an internal list of problematic medical cases maintained by Lamoureux, that contacts have been made with Mexican officials over the course of the detention period, and that the Boston Mexican Consulate has reported an inability to find a medical placement.  See generally Doc. No. 34, at 32; Ex. HH.  They do not show that efforts to effect Najera-Castillo's removal are moving forward towards an endpoint that is foreseeable in a reasonable period of time.

Lamoureux testified that ICE has no control over Mexico's decision to repatriate its citizens.  See Doc. No. 34, at 54. The latest communications of Mexican government officials in Boston regarding their ability to find a medical placement and a sponsor for Najera-Castillo indicate that they have been unable to do so.  See, e.g., Boston Mexican Consulate Letter, Ex. A. The simple fact that Mexican government officials have not

13

completely abandoned their efforts to repatriate Najera-Castillo does not justify Najera-Castillo's detention, where no discernable progress has occurred, or appears likely to occur in the reasonably foreseeable future, in finding Mexican relatives or waiving the family support requirement in his case.  Cf. Zadvydas, 533 U.S. at 702 (although due weight must be given to likelihood of successful future negotiations, ongoing, good faith efforts to effectuate removal, per se, do not render indefinite detention permissible).

The federal respondents have thus not met their burden in this case to demonstrate that there is a significant likelihood of removal in the reasonably foreseeable future.  Accordingly, further detention of Najera-Castillo is not lawful under Zadvydas.

## Conclusion

For the foregoing reasons, the district judge should:

1. Grant the petition for a writ of habeas corpus (Doc. No. 1);

2. Direct that respondents release petitioner, subject to any conditions of supervised release that may be lawfully imposed, within twenty-one days of the date of the district judge's Order; and

3. Direct that the federal respondents file a status report

in this action no later than thirty days after issuance of the district judge's Order, regarding the status of their compliance with this Order.

By agreement of the parties, the objection period relating to this Report and Recommendation ("R&R") under Fed. R. Civ. P. 72(b)(2) is shortened to seven days. That period may be extended upon motion. Failure to file specific written objections within that time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 21, 2017

cc: Jacqueline K. Mantica, Esq.
    Katherine E. Todd, Esq.
    R.J. Cinquegrana, Esq.
    Stuart M. Glass, Esq.
    Timothy John McLaughlin, Esq.
    Steven M. Gordon, Esq.
    Suzanne Amy Spencer, Esq.
    T. David Plourde, Esq.
    Thomas P. Velardi, Esq.